**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

RICKY V. RIVERA,
Petitioner,

v.

KEN CLARK, Warden,
Respondent.

Case No.: 20cv1831 GPC (RBM)

**ORDER:**

**(1) DENYING PETITION FOR A WRIT OF HABEAS CORPUS;**

**(2) DENYING REQUESTS FOR AN EVIDENTIARY HEARING AND APPOINTMENT OF COUNSEL; AND**

**(3) DENYING A CERTIFICATE OF APPEALABILITY**

Ricky V. Rivera ("Petitioner") is a state prisoner proceeding pro se and in forma pauperis with a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (ECF Nos. 1, 7.) Petitioner challenges his San Diego County Superior Court conviction in case number SDC240753 for battery with serious bodily injury with an additional finding he personally inflicted great bodily injury on the victim. (See Clerk's Tr. ["CT"] 472, 474, Lodgment No. 1, ECF No. 11.) After resentencing, Petitioner is currently serving a total sentence of 18 years as a result of consecutive sentences from the instant conviction in case number SCD240753 and a separate conviction in case number SCD243176. (See Resentencing CT 80, Lodgment No. 7, ECF No. 11.)

Petitioner alleges in Claim 1, the sole claim in the Petition, that the trial court abused its discretion when it denied his request to represent himself at trial, violating his right to self-representation under the Sixth and Fourteenth Amendments to the federal Constitution. (ECF No. 1 at 6, 14-21.) Petitioner also requests an evidentiary hearing and appointment of counsel. (Id. at 21.)

Respondent has filed an Answer and lodged the relevant state court record. (ECF Nos. 10-11.) Respondent maintains habeas relief is unavailable because (1) the Petition is untimely and (2) the state court adjudication of Claim 1 is neither contrary to nor an unreasonable application of clearly established federal law. (ECF No. 10 at 2.) Petitioner has filed a Traverse, in which he maintains his Petition is not untimely because the deadline should be equitably tolled due to attorney abandonment, and that the state court adjudication of Claim 1 is both contrary to and an unreasonable application of clearly established federal law and based on an unreasonable determination of the facts. (ECF No. 12.) In the Traverse, Petitioner again requests an evidentiary hearing. (Id. at 3.)

For the reasons discussed below, the Court **DENIES** the Petition for a Writ of Habeas Corpus, **DENIES** Petitioner's requests for an evidentiary hearing and appointment of counsel and **DENIES** a Certificate of Appealability.

## I. PROCEDURAL HISTORY

On September 5, 2013, following a jury trial, Petitioner was found guilty of battery with serious bodily injury in violation of Cal. Penal Code § 243(d) with a true finding on the allegation he personally inflicted great bodily injury on the victim within the meaning of Cal. Penal Code § 1192.7(c)(8). (CT 472, 474.) On that same day, the trial court also made findings Petitioner had suffered several prior convictions. (CT 473, 476.) On January 13, 2014, the trial court sentenced Petitioner to 25 years to life plus 5 years in prison. (CT 479-80.)

On appeal to the California Court of Appeal, Petitioner raised two claims, alleging (1) the trial court erred in denying his request to represent himself at trial, violating his right to self-representation under the Sixth and Fourteenth Amendments (the same claim

raised in the instant Petition) and (2) the trial court erred in refusing to dismiss one of his strikes.  (Lodgment No. 3, ECF No. 11-18.)  In an order dated November 9, 2015, the state appellate court remanded to the superior court with directions to strike one of Petitioner's strikes and to resentence him but otherwise affirmed the judgment.  (Lodgment No. 6, ECF No. 11-21.)  Petitioner did not file a petition for review in the California Supreme Court.

On May 20, 2016, Petitioner was resentenced to a term of 18 years, with the instant conviction to run consecutive to a conviction in a separate case.  (See Resentencing CT 80-81.)  Petitioner appealed the resentencing decision and the state appellate court affirmed the judgment of the trial court in an opinion issued May 19, 2017.  (Lodgment Nos. 9, 11, ECF Nos. 11-26, 11-28.)  Petitioner did not file a petition for review.

On April 3, 2020, proceeding pro se in case number S261661, Petitioner filed a petition for a writ of habeas corpus in the California Supreme Court, asserting for the first time in that court that the trial court violated his right to self-representation in denying his request to represent himself at trial.  (Lodgment No. 12, ECF No. 11-29.)  On June 24, 2020, the California Supreme Court summarily denied the habeas petition.  (Lodgment No. 13, ECF No. 11-30.)

On September 9, 2020, Petitioner constructively filed a Petition for a Writ of Habeas Corpus in this Court.[1]  (ECF No. 1.)

## II.    REQUEST FOR SELF-REPRESENTATION AT TRIAL

The following facts and background concerning Petitioner's request for self-representation are taken from the state appellate court opinion affirming Petitioner's conviction in People v. Rivera, D065375 (Cal. Ct. App. Nov. 9, 2015).  (See Lodgment

---

[1] While the federal habeas petition is filed-stamped September 15, 2020, the constructive filing date is September 9, 2020, the date Petitioner handed it to correctional officers for mailing to the Court.  (ECF No. 1 at 1, 11); Huizar v. Carey, 273 F.3d 1220, 1222 (9th Cir. 2001) ("Under the 'prison mailbox rule' of Houston v. Lack, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), a prisoner's federal habeas petition is deemed filed when he hands it over to prison authorities for mailing to the district court.")

No. 11, ECF No. 11-21.) The state court factual findings are presumptively reasonable and entitled to deference in these proceedings. See Sumner v. Mata, 449 U.S. 539, 545-47 (1981).

> On August 26, 2013, before the jury was selected, Rivera brought a motion to relieve appointed counsel under *People v. Marsden* (1970) 2 Cal.3d 118. The court denied the motion. Later that morning, Rivera requested to absent himself from the trial proceedings. The court also denied that motion. That afternoon, Rivera made his *Faretta* motion. The court asked Rivera if he was ready to proceed to trial and Rivera replied, "I think I can be ready if (defense counsel) gives me the copies and everything else." Defense counsel explained that he had given Rivera redacted versions of the police reports, but not some secondary materials, which still needed redacting: "If I were to give (Rivera) everything, I would have to go through a very time consuming process redacting, that's a really slow process for me because I protect my backside. I'm criminally liable, I'm civilly liable, and I'm liable for discipline with the State Bar if I turn over unredacted material to a defendant."
>
> The court observed that it was in the middle of voir dire, Rivera was not ready for trial, and he would need a continuance to obtain certain discovery from appointed counsel. The court stated Rivera had had four attorneys, including one retained counsel, who had quit representing him. The prosecutor argued that the People would be prejudiced if the trial were continued because one witness had come from out of town, and approximately five other witnesses would no longer be available. Rivera reiterated he was not ready to start trial that day.
>
> The court reviewed the factors set forth in *People v. Windham* (1977) 19 Cal.3d 121, 128, 129 (*Windham*) and denied Rivera's *Faretta* motion, stating the matters Rivera complained about regarding his counsel's representation were not recent and therefore Rivera could have brought his motion earlier; Rivera's counsel was providing quality representation; and Rivera had been represented by four attorneys at that point. Rivera clarified that one of the attorneys was retained counsel who had terminated representation on his own. The court concluded: "(W)e look at the disruption or the delay that might reasonably be expected to follow if the request is granted, and that would be I would have to declare a mistrial and dismiss this panel. We'd have to continue the case and then there is the possibility of losing witnesses. There are 25 witnesses subpoenaed by the People in this case including people from out of town. (¶) This case is 18 months old, and there is . . . a disruption or delay that is inherent in the granting of this motion

> because you're not ready to go to trial at this point. . . . I would have to grant that and that is much more of a disruption or delay than is justified under the circumstances; and so, the motion to proceed in pro per is denied." Immediately afterwards the court commenced voir dire.

(ECF No. 11-21 at 2-4.)

## III. PETITIONER'S CLAIM

The trial court abused its discretion in denying Petitioner's request to represent himself at trial pursuant to Faretta v. California, 422 U.S. 806 (1975), in violation of the Sixth and Fourteenth Amendments, including a failure to "ascertain all of the relevant facts before making its ruling" and because the trial record "also does not support a conclusion that [Petitioner] had a proclivity to substitute counsel during the proceedings." (ECF No. 1 at 6.)

## IV. DISCUSSION

The Court finds habeas relief is unavailable because (1) the habeas petition is untimely and Petitioner fails to demonstrate that statutory or equitable tolling or a combination of the two renders the petition timely and (2) the state court adjudication of the sole claim in the habeas petition is not contrary to, nor an unreasonable application of, clearly established federal law, nor is it based on an unreasonable determination of the facts.

### A. Statute of Limitations

This Petition is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"). With respect to the statute of limitations, AEDPA provides that:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D).

Petitioner's statute of limitations began to run on June 29, 2017, the day after his conviction became final, because he did not file a petition for review in the California Supreme Court following the California Court of Appeal decision affirming his judgment after resentencing. See Waldrip v. Hall, 548 F.3d 729, 735 (9th Cir. 2008) ("The California Court of Appeal affirmed Waldrip's conviction . . . Waldrip did not petition the California Supreme Court for review, and his conviction became final forty days later. . ."); see also Gaston v. Palmer, 417 F.3d 1030, 1033 (9th Cir. 2005) ("Gaston's conviction became final . . . forty days after the dismissal by the Court of Appeal."), citing Cal. R. Ct. 24(b)(1), 28(e)(1); see also Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001) (holding that Federal Rule of Civil Procedure 6(a), which instructs that: "'In computing any period of time prescribed or allowed by these rules, by the local rules of any district court, by order of court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included,'" was applicable to AEDPA's limitation period), quoting Fed. R. Civ. Proc. 6(a). Without tolling, Petitioner had one year after his judgment became final, June 29, 2018, to timely file a federal habeas petition. Here, Petitioner constructively filed his federal Petition on September 9, 2020, over two years after expiration of the statute of limitations, again absent tolling.

///

**1. Statutory Tolling**

AEDPA provides for statutory tolling, specifically that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

Petitioner does not assert an entitlement to statutory tolling. Even were Petitioner to assert as much, it is evident statutory tolling is not available, much less statutory tolling sufficient to render the petition timely. Again, the statute began to run June 29, 2017, the limitations period to file a federal petition ended June 29, 2018, and Petitioner constructively filed his federal Petition on September 9, 2020, over 800 days after the limitations period expired. Petitioner did not file any other petitions in state court during the time the limitations period was running. Instead, Petitioner filed a state habeas petition on April 3, 2020, well after the statute of limitations had expired; the state supreme court denied that petition on June 24, 2020. (ECF Nos. 11-29, 11-30.) Respondent is correct in observing a state petition filed after the expiration of the limitations period does not provide for statutory tolling. (See ECF No. 10-1 at 5, citing Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003).) Even in the event the Court could consider the time the state habeas petition was pending, it would only amount to just over 80 days, which is not nearly enough to render the federal Petition timely given the more than 800 days that elapsed between the time Petitioner's judgment became final and the filing of the federal Petition. Petitioner does not identify any other state court filings which could potentially serve to render his federal petition timely through the application of statutory tolling, and the Court finds none.

The fact remains that Petitioner bears the burden to demonstrate the statute of limitations is adequately tolled. See Banjo v. Ayers, 614 F.3d 964, 967 (9th Cir. 2010) ("[Petitioner] bears the burden of proving that the statute of limitation was tolled."), citing Smith v. Duncan, 297 F.3d 809, 814 (9th Cir. 2002), abrogated on other grounds by Pace v. DiGuglielmo, 544 U.S. 408 (2005); see also Zepeda v. Walker, 581 F.3d 1013, 1019 (9th Cir. 2009) ("[Petitioner] bears the burden of demonstrating that the AEDPA limitation

period was sufficiently tolled."), citing Smith, 297 F.3d at 814 (footnote omitted). Again, Petitioner does not attempt to argue he is entitled to statutory tolling and instead asserts only that he is entitled to equitable tolling due to attorney abandonment. (See ECF No. 12 at 2.) As such, the Court finds no need to develop the record further on this matter. In addition, as discussed below, the sole claim fails on the merits.

**2. Equitable Tolling**

Respondent maintains Petitioner "has not demonstrated an entitlement to equitable tolling sufficient to render the Petition timely." (ECF No. 10-1 at 5.) Respondent notes Petitioner explained his delay in filing his state habeas petition in the California Supreme Court by stating he had been waiting for his attorney to file a petition for review and attached a copy of correspondence from his counsel in November 2015, and asserts: "While it was certainly reasonable for Rivera to wait some time for counsel to act, counsel's failure to file a petition for review in 2015 does not explain the lack of action following finality in June 2017." (Id., citing ECF No. 11-29.) Petitioner denies Respondent's assertion of unexplained delay and states without accompanying factual explanation: "Petition is timely due to attorney abandonment." (ECF No. 12 at 2.)

In Holland v. Florida, 560 U.S. 631 (2010), the Supreme Court held that "§ 2244(d) is subject to equitable tolling in appropriate cases." Holland, 560 U.S. at 645. In so concluding, the Supreme Court noted "[w]e have previously made clear that a 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Id. at 649, quoting Pace, 544 U.S. at 418. The Ninth Circuit further instructs that: "Like any equitable consideration, whether a prisoner is entitled to equitable tolling under AEDPA will depend on a fact-specific inquiry by the habeas court which may be guided by 'decisions made in other similar cases.'" Doe v. Busby, 661 F.3d 1001, 1011 (9th Cir. 2011), quoting Holland, 560 U.S. at 650.

Respondent aptly observes Petitioner previously provided an explanation to the California Supreme Court with respect to his delay in filing the April 2020 state habeas

petition, as Petitioner indicated he had been waiting for appointed counsel to file a petition for review. (See ECF No. 10-1 at 5, citing ECF No. 11-29 at 6, 8.) In that filing, Petitioner stated: "I've waited on attorney of appeal to file a petition for review on same issue, yet I was abandoned on [sic] him filing petition for review in supreme court so I can file in federal court." (ECF No. 11-29 at 6.) Petitioner also included a document he listed as Exhibit A, which he described as: "Letter dated November 09th 2015 from Attorney Daniel J. Kessler, esq. stating he will be filing the 'petition for review' in California Supreme Court." (Id. at 7) (emphasis in original.)

Upon review, in the November 2015 letter Petitioner's appellate attorney indicated the state appellate court agreed one of Petitioner's strikes should have been stricken and ordered the case returned to trial court for resentencing, stated Petitioner's self-representation/Faretta claim had been denied, and then outlined the options for proceeding as follows: "We can file a petition for review in the California Supreme Court to challenge the *Faretta* motion denial. I am evaluating this option. The Supreme Court will certainly deny the petition for review, but this will exhaust your state remedies. You will then be able to raise the issue in federal court in a federal petition for writ of habeas corpus. This review petition will likely delay the appellate process, and it will cause the California Supreme Court to look over the entire opinion in your case. On the other hand, if no petition for review is filed, the remittitur will issue in 60 days and you will be returned to the Superior Court for a new sentencing hearing after that." (Id. at 8.)

Contrary to Petitioner's assertion, the November 2015 letter does not indicate the appellate attorney intended to file a petition for review. Instead, the attorney indicated it was simply an option he was evaluating, along with *not* filing a petition for review. Given this case was returned to the superior court and Petitioner was resentenced, it appears the attorney chose the second course of action noted in the letter. However, even providing the letter serves to persuasively explain Petitioner's failure to file a petition for review following the first state appellate court decision in 2015, Petitioner fails to address, much less explain, his delay in filing following his resentencing proceedings and resultant state

appellate court decision in 2017. It is this latter period between 2017 and 2020 which is the bulk of the time at issue, given the state habeas petition raising the Faretta claim in the state supreme court for the first and only time was not filed until April 2020 and the federal Petition was filed in September 2020. As such, Respondent's point is well taken that: "While it was certainly reasonable for Rivera to wait some time for counsel to act, counsel's failure to file a petition for review in 2015 does not explain the lack of action following finality in June 2017." (ECF No. 10-1 at 5.) Indeed, the fact remains Petitioner fails to provide any explanation concerning his failure to act between 2017 and 2020, such as any evidence of communication with counsel during this time or his attempts, if any, to file a petition for review or to urge appellate counsel to do so between 2017 and 2020. A review of the record reflects Petitioner had the same counsel on appeal of his 2016 resentencing proceedings as he previously had in 2015 on appeal of his original conviction and sentence. (See ECF No. 11-18 at 1 (2015 appeal); ECF No. 11-26 at 1 (2016 appeal after resentencing).) While Petitioner submitted the letter from appellate counsel in November 2015 concerning the appeal of his original conviction and sentence, Petitioner offers nothing concerning any communications with counsel about the 2017 appeal following his resentencing proceedings.

Again, to merit equitable tolling, a petitioner must not only demonstrate that "'extraordinary circumstances stood in his way' and prevented timely filing" but also must show "he has been pursing his rights diligently." Holland, 560 U.S. at 649, quoting Pace, 544 U.S. at 418. Even were the Court to accept the argument Petitioner may have waited for counsel to file a petition for review following the 2015 state appellate court decision, Petitioner provides nothing to substantiate a contention he similarly waited for counsel to act after the conclusion of the resentencing proceedings and resultant appeal in 2017 such that counsel's apparent failure to file a petition for review in 2017 was the cause of Petitioner's untimely September 2020 federal Petition. See Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003) ("The prisoner must show that the 'extraordinary circumstances' were the cause of his untimeliness.'"), quoting Stillman v. LaMarque, 319 F.3d 1199, 1203

(9th Cir. 2003).  Petitioner also fails to even allege diligence or offer any explanation as to what actions he took, if any, between 2017 and 2020.  As with the failure to demonstrate extraordinary circumstances that caused the untimeliness, Petitioner's failure to allege reasonable diligence is also fatal to his equitable tolling argument.  See Smith v. Davis, 953 F.3d 582, 601 (9th Cir. 2020) (en banc) (affirming district court's denial of petition as untimely following refusal to apply equitable tolling where petitioner failed to allege diligence after receiving his case file from counsel, reasoning "the petitioner must act with diligence in preparing his petition to warrant equitable tolling; [Petitioner] has not alleged that he was diligent in this manner.")

Given the only explanation Petitioner provides concerns the events immediately following the first appellate court opinion in 2015 and involves a 2015 letter from counsel indicating a petition for review might not be filed, and Petitioner fails to explain his delay in filing following the 2017 resentencing proceedings and appeal nor alleges much less demonstrates diligence in pursing his case following the 2017 resentencing, the Court finds equitable tolling is not warranted in this case.  Compare Gibbs v. Legrand, 767 F.3d 879, 893 (9th Cir. 2014) (petitioner found diligent and equitable tolling available in case of attorney abandonment where "counsel did not inform him that state post-conviction proceedings had ended, even though counsel had pledged to do so, even though Gibbs wrote to his counsel repeatedly for updates, and even though time in which to file a federal habeas petition was swiftly winding down.  As a direct result, Gibbs did not learn that the time for him to file his federal petition had begun until the time was over.") with Pace, 544 U.S. at 419 (equitable tolling not available for lack of diligence where "not only did petitioner sit on his rights for years *before* he filed his PCRA petition, but he also sat on them for five more months *after* his PCRA proceedings became final before deciding to seek relief in federal court.")  On this record, Petitioner fails to demonstrate attorney abandonment amounted to extraordinary circumstances that prevented him from timely filing his federal Petition during the AEDPA limitations period, nor does Petitioner demonstrate reasonable diligence.  Holland, 560 U.S. at 649 ("[A] 'petitioner' is 'entitled

to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."), quoting Pace, 544 U.S. at 418. Accordingly, the Court finds equitable tolling is not appropriate.

**C. Merits**

Even if Petitioner were somehow able to demonstrate his habeas petition is timely through statutory or equitable tolling or a combination of the two, habeas relief remains unavailable because the state court adjudication of the sole claim in his Petition is not contrary to, nor an unreasonable application of, clearly established federal law, nor is it based on an unreasonable determination of the facts.

A state prisoner is not entitled to federal habeas relief on a claim that the state court adjudicated on the merits, unless the state court adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Harrington v. Richter, 562 U.S. 86, 97-98 (2011), quoting 28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established law if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." Id.; Bruce v. Terhune, 376 F.3d 950, 953 (9th Cir. 2004). With respect to section 2254(d)(2), "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable– a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007), citing Williams, 529 U.S. at 410. "State-court factual findings,

moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'" Rice v. Collins, 546 U.S. 333, 338-39 (2006), quoting 28 U.S.C. § 2254(e)(1).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Richter, 562 U.S. at 101, quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). "If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. . . . It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." Richter, 562 U.S. at 102.

In a federal habeas action, "[t]he petitioner carries the burden of proof." Cullen v. Pinholster, 563 U.S. 170, 181 (2011), citing Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam). However, "[p]risoner pro se pleadings are given the benefit of liberal construction." Porter v. Ollison, 620 F.3d 952, 958 (9th Cir. 2010), citing Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).

"The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense. . . . Although not stated in the Amendment in so many words, the right to self-representation-to make one's own defense personally-is thus necessarily implied by the structure of the Amendment." Faretta v. California, 422 U.S. 806, 819 (1975) (footnote omitted). "In order to invoke the right of self-representation successfully, a defendant's waiver of counsel must be 'timely, not for the purposes of delay, unequivocal, and knowing and intelligent.'" McCormick v. Adams, 621 F.3d 970, 976 (9th Cir. 2010), quoting United States v. Erskine, 355 F.3d 1161, 1167 (9th Cir. 2004). The Faretta Court did not articulate a specific measure for timeliness, stating only that in a situation where, "weeks before trial, Faretta clearly and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel" and "[t]he record affirmatively shows that Faretta was literate, competent,

and understanding, and that he was voluntarily exercising his informed free will," that "[i]n forcing Faretta, under these circumstances, to accept against his will a state-appointed public defender, the California courts deprived him of his constitutional right to conduct his own defense." Faretta, 422 U.S. at 835-36; see also Marshall v. Taylor, 395 F.3d 1058, 1061 (9th Cir. 2005) (Faretta "may be read to require a court to grant a Faretta request when the request occurs 'weeks before trial,'" but "does not define when such a request would become untimely.")

Petitioner presented his Faretta claim in a habeas petition to the California Supreme Court, which the state supreme court denied without a statement of reasoning or citation to authority. (See ECF Nos. 11-29, 11-30.) Petitioner also previously presented this same claim to the California Court of Appeal. (See ECF No. 11-18.) The state appellate court denied Petitioner's claim on the merits in a reasoned opinion. (See ECF No. 11-21.)

The Supreme Court has repeatedly stated that a presumption exists "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991); see also Wilson v. Sellers, 584 U.S. ___, 138 S.Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.") Given the lack of any argument or grounds in the record to rebut this presumption, the Court will "look through" the California Supreme Court's silent denial on state habeas to the reasoned opinion issued by the state appellate court on appeal with respect to Petitioner's claim that the trial court violated his right to self-representation. See Ylst, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them *no* effect- which simply 'looks through' them to the last reasoned decision- most nearly reflects the role they are ordinarily intended to play.") (footnote omitted).

The California Court of Appeal rejected Petitioner's contention the trial court abused its discretion in denying his Faretta motion, reasoning in relevant part as follows:

///

> Rivera brought his *Faretta* motion on the morning trial was scheduled to start. As such, the request was not made "within a reasonable time prior to commencement of trial." (See *People v. Moore* (1988) 47 Cal.3d 63, 79-81 (*Faretta* motion made on the day trial was set to begin would have been well within the court's discretion to deny); *People v. Scott* (2001) 91 Cal.App.4th 1197, 1205 (*Faretta* motions made "just prior to the start of trial" are untimely); *People v. Hill* (1983) 148 Cal.App.3d 744, 757 (*Faretta* motion made five days before trial was untimely and within trial court's discretion to deny).) By the time Rivera brought his *Faretta* motion, the proceedings had been ongoing for 18 months. The length and stage of the proceedings weighed against granting the *Faretta* motion.
>
> Applying the other *Windham* factors, the trial court evaluated the quality of counsel's representation and concluded he was adequately representing Rivera. The court further found that Rivera's proclivity to substitute counsel weighed in favor of denying Rivera's *Faretta* motion. The court pointed out Rivera had had four different attorneys, although it acknowledged Rivera's assertion that retained counsel had quit and was not fired by him. The court also considered the reasons for Rivera's motion and concluded, "These are reasons that could have been stated at some earlier time well before we started this whole process with the jury, but they were not." The court found Rivera's reasons inadequate to justify granting the motion. Moreover, granting the motion would have disrupted or further delayed the proceedings. In sum, the *Windham* factors militated against granting Rivera's untimely request to represent himself in propria persona. We therefore affirm the trial court's denial of the *Faretta* motion as well within the court's discretion.

(ECF No. 11-21 at 5-6.)

The state appellate court, like the trial court, found Petitioner's Faretta motion to be untimely. (See id.; see also RT 50-51, 61.) This finding was reasonable given Petitioner first raised a request to represent himself on the morning of trial, just prior to the commencement of voir dire proceedings. (See RT 50, 61-62.) With respect to the reason for the late request, Petitioner asserts he did not previously know he had a right to self-representation. (ECF No. 1 at 17, citing RT 50.) When the trial court stated: "This case has been pending for 18 months, Mr. Rivera. Why is it that you waited until we started the trial to make your -- make your request for representation?" Petitioner responded: "Why did I? Because he didn't tell me about I could have represented myself, he told me about

hiring a lawyer. And I could have went over most of these things after he told me that and I could have asked him for that. Do you know what I'm saying. But he didn't tell me like how do you say these different options, you know, what I could do as a person." (RT 50.) The trial court responded: "Well, what I'm required to do when there is a late request, you're not entitled as a matter of right to represent yourself now that we started trial," and "I have discretion on whether or not to grant it or deny it," and then stated: "I need to look at some things including the reasons for the request, the quality of the representation, your prior proclivity to substitute counsel, the stage of the proceedings and the disruption or delay that might be expected as a result of your substituting in." (RT 50-51.)

Upon review, the state court did not act unreasonably in finding Petitioner's request to represent himself untimely. Even assuming the truth of the stated reason for delay, the request was nonetheless made on the day of trial, when the prospective jurors were assembled and waiting to commence voir dire. (See ECF No. 11-21 at 5) ("Rivera brought his *Faretta* motion on the morning trial was scheduled to start. As such, the request was not made 'within a reasonable time prior to commencement of trial.'") (quotation omitted.) The record also reflects the Faretta request came only after the trial court denied Petitioner's subsequent requests to relieve counsel and to absent himself from the trial proceedings, both raised and rejected just hours earlier.[2] (See RT 17, 38.) The Ninth Circuit has found the denial of a request made just prior to commencement of trial as untimely, such as Petitioner's, does not run afoul of section 2254(d)(1). See Stenson v. Lambert, 504 F.3d 873, 884 (9th Cir. 2007) ("We have found that a state court's denial of a motion made on the morning trial began as untimely was neither contrary to nor an

[2] Petitioner indicated disagreement and dissatisfaction with counsel also prompted his Faretta request. In response to the trial court's inquiry: "So what I'm looking for now first and foremost is your reason for the request, making the request at this time," Petitioner stated: "Because I can look into certain -- I can ask certain questions that he didn't go ask. I can ask for certain people to be placed on that bench and he's not going to want to ask to be placed on that bench," that "I think I can represent myself a whole lot better," and "I don't see him doing what he's supposed to do to win this case, you know." (RT 51-52.)

unreasonable application of clearly established federal law," and noting "[t]he Supreme Court has never held that Faretta's 'weeks before trial' standard requires courts to grant requests for self-representation coming on the eve of trial."), citing Marshall, 395 F.3d at 1061. As such, the state court's conclusion Petitioner's request was untimely was neither contrary to nor an unreasonable application of clearly established law.

Nor does Petitioner demonstrate the state court's decision was based on an unreasonable factual determination in violation of section 2254(d)(2). Again, it is clear from the record the Faretta request was late, as it was made on the morning trial was set to begin and when jury selection was just about to commence. (See RT 50, 61-62.) While Petitioner does not dispute his request was made on the day of trial, he asserts the state court's decision to deny the request was unfair and unreasonable to the extent it was based on the anticipated delay in the proceedings and his prior substitution of counsel. (See ECF No. 1 at 18-21.) The Court's review of the record does not support Petitioner's contentions.

Petitioner first contends the state court unreasonably concluded he requested or required a continuance to proceed given he "never sought a delay in the proceedings" but instead "only asked to be provided with the discovery before he started trial." (ECF No. 1 at 19.) Petitioner asserts that "[a]ny delay would have been attributable to [] counsel's request for time to redact identifying information from the 'secondary material' in order to 'protect his backside' from criminal and/or civil liability." (Id.) (citations omitted.) The state appellate court found "granting the motion would have disrupted or further delayed the proceedings," (see ECF No. 11-21 at 6), but did not attribute the potential delay solely to Petitioner nor did the state court indicate Petitioner specifically requested a continuance. Instead, the state court simply stated: "Rivera was not ready for trial, and he would need a continuance to obtain certain discovery from appointed counsel" and "Rivera reiterated he was not ready to start trial that day." (Id. at 3.) These factual findings are supported by the Court's review of the record. When the trial court noted Petitioner had not received some of the discovery and stated: "we're going to have to delay these proceedings because you're not ready," Petitioner responded: "No, I'm not ready until he gives me that," to

which the trial court then remarked: "Well, okay, then you're not ready, which means we'd have to continue the case." (RT 53.) Later in the discussion, the trial court and Petitioner had the following exchange:

The Court: If I let you represent yourself are you ready to do this case right now with this jury?

The Defendant: I'm not because he doesn't have that blotched out.

The Court: Okay, then you would require a continuance.

(RT 57.) As Petitioner repeatedly indicated he was not prepared to start trial that day, it was not unreasonable for the trial court to determine a continuance would have been necessary in the event it granted Petitioner's Faretta request, nor was it unreasonable for the state appellate court to similarly determine "granting the motion would have disrupted or further delayed the proceedings." (See ECF No. 11-21 at 6.) It is apparent that regardless of the cause for the anticipated delay, a continuance would have been needed had the Faretta request been granted because Petitioner made the request to represent himself on the day of trial and was not ready to start trial that day. Petitioner fails to show the state court decision was based on an unreasonable factual determination in this respect.

To the extent Petitioner contends the state court unreasonably found he was using the Faretta request for the purposes of delay or as an obstructionist tactic without record support for such a conclusion (see ECF No. 1 at 19), the Court finds no indication the state court made any such finding. Upon review, the state appellate court did not attribute any such motive to Petitioner's self-representation request, but instead simply noted the late timing of the request, stating "[b]y the time Rivera brought his Faretta motion, the proceedings had been ongoing for 18 months," and that "granting the motion would have disrupted or further delayed the proceedings." (ECF No. 11-21 at 5-6.) The trial court similarly noted the lateness of the request and cited the anticipated delay were the request granted but did not indicate or opine Petitioner intended to obstruct or delay the proceedings in pursing self-representation. Instead, the trial court remarked and concluded: "This case is 18 months old, and there is -- there is a disruption or delay that is inherent in

the granting [] of [] this motion because you're not ready to go to trial at this point.  That I would have to grant that and that is much more of a disruption or delay than is justified under the circumstances; and, so, the motion to proceed in pro per is denied."  (RT 62.)

With respect to the reasonableness of the state court's factual findings concerning Petitioner's prior substitution of trial counsel, Petitioner argues "[t]he trial courts [sic] finding that [Petitioner] had a proclivity to substitute counsel was also unfounded, and unfair" and points out that retained counsel "voluntarily quit" independent of any action by Petitioner.  (ECF No. 1 at 20.)  Petitioner also notes that two of his attorneys were from the Public Defenders office and he "had no control over the fact that they both appeared on his behalf during the course of the case," and "he did not substitute them."  (Id.)  The trial record reflects the court acknowledged Petitioner's assertion he did not know why one public defender was taken off the case and replaced by another, as well as that his retained counsel was not fired but quit.  (RT 54.)  To Petitioner's statement that: "You know so these problems were not my doing," the trial court replied: "No, no, I'm not saying they are," but pointed out that Petitioner failed to raise the matter anytime in the prior weeks but instead waited until a day when the "jury is here," and "[w]e're impaneling a jury."  (Id.)  In rendering its decision denying the Faretta request, the trial court mentioned Petitioner's "prior proclivity to substitute counsel" among the factors to consider, but also acknowledged the lack of clarity concerning the reasons for the substitutions, stating "I don't know if you fired [prior counsel], he withdraw [sic] or exactly what the ins and outs of that are, but you've gone through four attorneys including [present counsel] at this point so there is a proclivity to substitute counsel."  (RT 61.)  Because the record clearly shows Petitioner indeed had been represented by four different defense counsel during the pendency of his case (see e.g. RT 54), this finding was not unreasonable.

The state appellate court also clearly and accurately noted Petitioner's history with counsel consistent with Petitioner's present assertion, as the account of the trial court proceedings included a mention that "[t]he court stated Rivera had had four attorneys, including one retained counsel, who had quit representing him" while also specifically

acknowledging "Rivera clarified that one of the attorneys was retained counsel who had terminated representation on his own." (ECF No. 11-21 at 3-4.) In evaluating the propriety of the trial court's decision to deny Petitioner's Faretta request and the trial court's finding that "Rivera's proclivity to substitute counsel weighed in favor of denying Rivera's Faretta motion," the state appellate court also again specifically recognized "[t]he court pointed out Rivera had had four different attorneys, although it acknowledged Rivera's assertion that retained counsel had quit and was not fired by him." (Id. at 5-6.)

This factual recitation appears accurate based on the Court's review of the record and appears consistent with Petitioner's assertion that his retained counsel quit and had not been substituted or fired by Petitioner. The fact remains that for whatever reason, Petitioner had been represented by four trial counsel during his case. Even accepting Petitioner's assertion he did not control the fact that two public defenders had appeared on his behalf and that retained counsel quit of his own volition, that still leaves the fact that Petitioner substituted or at least attempted to substitute counsel at least twice during the pendency of his case, the first time in replacing the public defender with retained counsel (see RT 54), and the second time in unsuccessfully attempting to remove the fourth and most recent counsel through Marsden motion on the day trial was set to begin (see RT 17), just prior to his request to represent himself. Based on this record, the state court was neither incorrect nor unreasonable in finding the facts showed Petitioner had a proclivity to substitute counsel. The Court finds no error in this respect, much less an unreasonable factual determination on the matter such that the state court's decision could potentially be in violation of section 2254(d)(2).

Because Petitioner fails to demonstrate the state court determination was contrary to, or an unreasonable application of, clearly established federal law, or that it was based on an unreasonable determination of the facts, habeas relief is unavailable.

## V. EVIDENTIARY HEARING/APPOINTMENT OF COUNSEL REQUESTS

Petitioner requests an evidentiary hearing on his Faretta claim. (ECF No. 1 at 21.) Here, because regardless of whether Petitioner is entitled to equitable or statutory tolling

sufficient to render his Petition timely, this claim is without merit and habeas relief is not warranted based on the Court's review of the record, an evidentiary hearing is unnecessary. See e.g. Totten v. Merkle, 137 F.3d 1172, 1176 (9th Cir. 1998) ("[A]n evidentiary hearing is not required on issues that can be resolved by reference to the state record.")

In addition to requesting an evidentiary hearing and a grant of habeas relief, Petitioner also requests "appointing the defendant, Petitioner Mr. Rivera, an attorney, in the fundamental interest of justice." (ECF No. 1 at 21.) District courts are provided with statutory authority to appoint counsel in a federal habeas case when a petitioner is financially eligible and "the court determines that the interests of justice so require." 18 U.S.C. §3006A(a)(2)(b). However, because regardless of the outcome of the statutory and equitable tolling analyses, it is clear Petitioner's sole claim clearly fails on the merits and does not warrant habeas relief, and because it is plain from the pleadings Petitioner is able to cogently state his claim and arguments without the assistance of counsel, the Court finds the interests of justice do not necessitate appointment of counsel in this case. See e.g. Chaney v. Lewis, 801 F.2d 1191, 1196 (9th Cir. 1986) ("Indigent state prisoners applying for habeas corpus relief are not entitled to appointed counsel unless the circumstances of a particular case indicate that appointed counsel is necessary to prevent due process violations.") (citations omitted); see also LaMere v. Risley, 827 F.2d 622, 626 (9th Cir. 1987) (district court did not abuse discretion is declining to appoint counsel where "district court pleadings illustrate to us that [the petitioner] had a good understanding of the issues and the ability to present forcefully and coherently his contentions.")

## VI.    CERTIFICATE OF APPEALABILITY

A petitioner may not appeal "the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court" except where "a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C.A. foll. § 2254. "A certificate of appealability should issue if 'reasonable jurists could debate

whether' (1) the district court's assessment of the claim was debatable or wrong; or (2) the issue presented is 'adequate to deserve encouragement to proceed further.'" Shoemaker v. Taylor, 730 F.3d 778, 790 (9th Cir. 2013), quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000). This includes a district court's decision on a procedural issue. See Buck v. Davis, 580 U.S. ___, 137 S.Ct. 759, 777 (2017) ("[A] litigant seeking a COA must demonstrate that a procedural ruling barring relief is itself debatable among jurists of reason; otherwise, the appeal would not 'deserve encouragement to proceed further.'"), quoting Slack, 529 U.S. at 484.

In this instance, the Court finds issuing a certificate of appealability is not appropriate as reasonable jurists would not find debatable or incorrect the Court's conclusion (1) that habeas relief is not warranted on the sole claim in the federal Petition or (2) that Petitioner is not entitled to statutory or equitable tolling, nor does the Court find any of the issues presented deserve encouragement to proceed further. See 28 U.S.C. 2253(c); Slack, 529 U.S. at 484. Accordingly, the Court **DENIES** a certificate of appealability.

## VII. CONCLUSION AND ORDER

For the reasons discussed above, the Court **DENIES** the Petition for a Writ of Habeas Corpus, **DENIES** Petitioner's requests for an evidentiary hearing and for appointment of counsel and **DENIES** a Certificate of Appealability.

**IT IS SO ORDERED.**

Dated: June 15, 2021

Hon. Gonzalo P. Curiel
United States District Judge